**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

[Filed Electronically]

| | |
|---|---|
| **CHARLES MATLOCK,** ) | |
| ) | |
| **PLAINTIFF** ) | |
| ) | |
| v. ) | |
| ) | |
| **LOUISVILLE-JEFFERSON COUNTY** ) | |
| **METRO GOVERNMENT,** ) | |
| ) | |
| **Serve:** Hon. Craig Greenberg, Mayor ) | |
| 527 West Jefferson Street ) | |
| Louisville, KY 40202 ) | |
| ) | |
| **-and-** ) | |
| ) | |
| **JERRY COLLINS** ) | |
| **individually and in his capacity as** ) | |
| **Director of the Louisville Metro** ) | |
| **Department of Corrections** ) | |
| ) | |
| **Serve:** Jerry Collins, Director ) | **Case No.** 3:23-CV-637-DJH |
| Louisville Metro ) | |
| Department of Corrections ) | |
| 400 S. Sixth Street ) | |
| Louisville, KY 40202 ) | |
| ) | |
| **-and-** ) | |
| ) | |
| Hon. Mike O'Connell ) | |
| Jefferson County Attorney ) | |
| 600 West Jefferson Street, 2nd floor ) | |
| Louisville, KY 40202 ) | |
| ) | |
| **-and-** ) | |
| ) | |
| **SGT. SAMUEL COLLEY** ) | |
| **Individually and in his official capacity** ) | |
| **as a Correctional Officer with the Louisville** ) | |
| **Metro Department of Corrections** ) | |
| ) | |

1

| | |
|---|---|
| -and- | ) |
| | ) |
| **OFFICER DANIEL RICHARDSON** | ) |
| **Individually and in his official capacity** | ) |
| **as a Correctional Officer with the Louisville** | ) |
| **Metro Department of Corrections** | ) |
| | ) |
| -and- | ) |
| | ) |
| **OFFICER TASHA RUDOLPH** | ) |
| **Individually and in her official capacity** | ) |
| **as a Correctional Officer with the Louisville** | ) |
| **Metro Department of Corrections** | ) |
| | ) |
| -and- | ) |
| | ) |
| **OFFICER JOHN DOE 1-2** | ) |
| **Individually and in their official capacities** | ) |
| **as a Correctional Officers with the Louisville** | ) |
| **Metro Department of Corrections** | ) |
| | ) |
| **DEFENDANTS.** | ) |

# COMPLAINT

## I.  INTRODUCTION

1. Plaintiff Charles Matlock complains of the misconduct and negligence of Defendants named in the caption above. As more specifically set forth below, after Plaintiff was incarcerated at the Louisville Metro Department of Corrections ("LMDC") as a pretrial detainee, Defendants failed to protect him from assault and then failed and refused to provide him treatment for the obviously serious injuries he suffered as a result. Defendants' conduct was objectively unreasonable and deliberately indifferent to Plaintiff's security, safety, health and well-being, and to his constitutional and common law rights. It is the purpose of this action to recover the actual damages Plaintiff sustained as a result of Defendants' misconduct, and punitive damages to punish Defendants' conduct and forever deter its repetition.

## II. JURISDICTION AND VENUE

2. Plaintiff seeks damages from Defendants under the Civil Rights Act of 1871, 42 U.S.C. §1983, for gross and unconscionable violations of the rights, privileges and immunities guaranteed him by the Eighth and Fourteenth Amendments to the Constitution of the United States. Accordingly, this Court has jurisdiction of this case pursuant to the provisions of 28 U.S.C. §§1331 and 1343. Plaintiff also seeks damages for negligence and gross negligence, and Defendants' violation of KRS 441.045(3). Jefferson County, Kentucky is the location of all acts pertinent to this suit, and venue is therefore proper in this Court.

## III. PARTIES

3. Plaintiff is a resident of Daviess County, Kentucky.

4. The Defendant, Louisville-Jefferson County Metro Government, situated in Jefferson County, ("Metro Government") is an urban-county government in Kentucky which retains the powers of a first-class city, and now and at all times mentioned in this Complaint was a municipal corporation organized and is existing under the laws of the Commonwealth of Kentucky. The same said defendant maintains a correctional department, the LMDC, with duly appointed correctional officers pursuant to the mandate laws of the Commonwealth of Kentucky, as amended and is also statutorily responsible for the care and custody of inmates in its jail.

5. Defendant LMDC, at all times mentioned herein, was responsible for the establishment of policies either formally or by custom for, and was responsible for the training, supervision and conduct of the individual Defendants named above and the officers and employees of the LMDC.

6. Defendant Director Jerry Collins was, at all times mentioned herein, acting as the chief administrative officer of JCDC and, as such, was responsible for the establishment of policies, either formally or by custom, and was likewise responsible for the training, supervision, and

conduct of the officers and employees of JCDC, including Defendants Colley, Richardson, Rudolph and the John Doe officers described more particularly herein. Defendant Collins was also responsible for the care and custody of inmates of the JCDC.

7. Defendant Colley was, at all times mentioned herein, acting as a Sargent and shift commander at the JCDC and was responsible for the training, supervision, and conduct of Defendants Richardson, Rudolph, and Does 1-2.

8. Defendants Richardson, Rudolph, and John Does 1-2 were, at all times mentioned herein, are believed to be citizens and residents of Kentucky and were employed as Officers of JCDC with the responsibility and duty to adhere to the policies and procedures of the JCDC and to conform their conduct at all times in a manner consistent with their duties under the law to protect the health, security, and safety of inmates under their supervision and to attend to their obvious medical needs.

9. Defendants Collins, Colley, Richardson, Rudolph and John Does 1-2, at all times mentioned herein, acted under color of law and they are being sued in both their individual and official capacities.

## IV.    NATURE OF DEFENDANTS' CONDUCT

10. Defendants, individually and in concert with one another, engaged in the conduct described below under color of the law of the Commonwealth of Kentucky and Metro Government. The offenses described below resulted from the failure of Defendants to employ qualified persons for positions of authority, and/or to properly or conscientiously train and supervise the conduct of such persons after their employment, and/or to promulgate appropriate operating policies and procedures either formally or by custom to protect the constitutional and common law rights of Plaintiff, and to meet their statutory responsibilities to care for the safety, security, health and obvious medical needs of inmates in the JCDC. Defendants' conduct was objectively unreasonable,

intentional, and grossly negligent, indicated active malice toward Plaintiff and a total, deliberate and reckless disregard for and indifference to his life, health, medical needs, and constitutional and common law rights, and justifies an award of punitive damages in addition to the actual damages he is entitled to recover.

## V.     FACTS

11. On or about March 25, 2023, the Plaintiff was a pretrial detainee awaiting arraignment before the Jefferson District Court on charges of Theft By Unlawful Taking, housed in General Population and assigned to "Dorm 3" in a location designated "H6 West Hold" of the Main Jail Complex ("MJC") of LMDC.

12. Plaintiff had no previous history of violence or aggressive behavior and was classified as "passive" when he was booked into the LMDC on March 22, 2023.

13. Because of lack of adequate housing space within the MJC, the dorm to which the Plaintiff was assigned housed more inmates than that for which it was designed, forcing multiple inmates to sleep in what was designed to be a common area of the dorm and creating an overcrowded living environment.

14. Among those housed with the Plaintiff on the date indicated was an inmate Kenya Manson ("Manson").

15. Manson was being held on charges that included assault and terroristic threatening.

16. Manson was known to be a violent inmate, having assaulted other inmates at least twice within the LMDC facility in the two months prior to the date in question.

17. Despite having knowledge of inmate Manson's violent and dangerous propensities that posed a clear and foreseeable threat to the security and safety of fellow inmates, and pursuant to policy and/or custom of LMDC, Defendants, including John Doe Defendants 1 and 2, deliberately

and knowingly failed to classify and house inmate Manson in a manner which would result in his segregation from the General Population and, at the time alleged herein, inmate Manson was housed in the same dorm as the Plaintiff, having free access to contact with the other inmates assigned to that dorm, including the Plaintiff.

18. Defendants knew or should have known that inmate Manson was a violent inmate who should be segregated from the general population and should have been classified in a manner to prevent his unprovoked assault on fellow inmates. These Defendants were subjectively aware that inmate Manson presented a substantial risk of serious harm to other inmates, including the Plaintiff, but disregarded that risk by failing to take measures to reasonably abate it.

19. It was the policy or custom of JCDC to employ a system of classification and housing assignment that resulted in known violent inmates who presented a substantial risk of harm to inmates in the general population to be placed in the general population without sufficient observation or safeguard to reasonably abate the risk of harm to general population inmates at the hands of these violent inmates.

20. Defendants were aware that violent inmates were routinely not properly classified and segregated at a level that rose to a policy or custom that presented a substantial and unreasonable risk of harm to passive general population inmates like the Plaintiff.

21. At about 8:40 PM on March 25, 2023, inmate Manson, without apparent provocation, attacked and beat the Plaintiff, causing severe and obvious injuries, including multiple fractures to the bones in his face, fractures to the orbital bones of his eyes, and resulting in an epidural hematoma requiring a craniotomy, and which resulted in permanent impairments to Plaintiff's cognitive functioning.

22. On information and belief, Defendant Colley was the shift sergeant assigned command of

the area of the MJC that included West Hold H6, Dorm 3, at the time the assault took place. As such, Defendant Colley had knowledge that the violent propensities of inmate Manson presented an ongoing substantial risk of harm to other inmates in the Dorm and Colley had the authority to request his removal from the dorm, but deliberately failed to do so. Defendant Colley also had the responsibility of monitoring the activities of the dorm, or was responsible for ensuring that the dorm was monitored for violent activities by the inmates, but deliberately failed to monitor, or otherwise directly participated in the decision not to monitor under his command with such indifference as to create an unreasonable risk of harm to inmates occupying the dorm.

23. On information and belief, Defendant Officers Richardson and Rudolph were assigned to the area of the MJC that included West Hold H6, Dorm 3, at the time the assault took place. These Officers had knowledge that the violent propensities of inmate Manson presented an ongoing substantial risk of harm to other inmates in the Dorm and were aware of the general failure of JCDC to properly classify and segregate violent inmates like Manson, but deliberately took no action to adequately abate the risk and were generally deliberately indifferent to the substantial risk of serious harm posed by Manson in particular and to the JDCD policy or custom of inadequate classification of violent inmates in general.

24. Dorm 3, as described herein, is under constant video surveillance through which LMDC officers and employees can always monitor the activities of the inmates, including at the time of the assault of the Plaintiff.

25. Defendants deliberately failed to adequately monitor and observe the activities in Dorm 3 at the time and date described and did not respond to the assault until approximately 11:45 PM, over three hours after the Plaintiff was attacked and gravely injured, and only when other inmates in the dorm held the injured and bleeding Plaintiff up to the dorm door and repeatedly kicked and

knocked to attract the attention of officers.

26. Defendants Colley, Richardson and Rudolph had a duty to monitor and observe the inmates under their custody and control for the purposes of ensuring that they were not subjected to conditions that would rise to a deprivation of their rights guaranteed by the Eighth and Fourteenth Amendments to the Constitution and to allow Defendants to promptly respond to serious medical needs of those inmates. Defendants Colley, Richardson and Rudolph deliberately breached this duty, resulting in both the attack on the Plaintiff and the failure to respond and provide him with medical attention for hours after he was assaulted.

27. Because of the failure of the Defendants to adequately monitor and respond to the assault, Plaintiff was forced to endure a prolonged period of pain and suffering without medical attention, which allowed his condition to deteriorate, and which resulted in additional and increased injury resulting from swelling on Plaintiff's brain.

28. Upon eventual discovery of the assault by the Defendants, Plaintiff was transported to the Emergency Department of the University of Louisville Hospital where he underwent a tracheostomy and neurosurgery, along with surgery to address the fractures to his face. His condition was stabilized, and he was discharged to the care of LMDC with a long list of discharge instructions necessary to his health and recovery, including follow up with an eye specialist.

29. However, instead of following the Hospital's orders for follow-up treatment for Plaintiff's injuries, which the Defendants had knowingly and indifferently failed and refused to prevent, Defendants instead effectuated Plaintiff's release from custody on his own recognizance to seek medical treatment on his own. Defendants' actions were motivated solely by a desire to avoid the cost and burden of treating the injuries Plaintiff sustained as a result of Defendants' misconduct.

30. Consequently, instead of receiving continued, prompt, and professional medical care for

his injuries, as ordered by the Hospital, Plaintiff was left to administer his own follow up care and seek additional treatment. This resulted in delay and deterioration of his condition, causing additional mental and physical pain and suffering, and requiring treatment at his own expense, which could have been avoided.

31. On information and belief, it is a custom and practice of Defendants to effect the release of an inmate on his or her own recognizance when such inmate is in need of medical treatment for the sole purpose of avoiding any payment obligation associated therewith, in flagrant violation of KRS 441.045(3). Such custom and practice "is both unconscionable and against public policy," and "is unenforceable for the purpose of orchestrating exoneration of the county from its lawful obligation under KRS 441.045(3)." *Hospital of Louisa v. Johnson Co. Fiscal Court*, 2011 WL 1103054 (Ky. March 24, 2011).

32. Defendant Collins was individually and officially aware of and responsible for each and every policy, procedure, and / or custom alleged above that caused or contributed to the attack upon the Plaintiff and the subsequent failures to provide adequate medical care and Defendant Collins was subjectively aware of the deficiencies and probable consequences of such policies, procedures, and /or customs but was deliberately indifferent to the harm and deprivations likely to result from their implementation and continuation.

33. Defendant Metro Government is responsible for providing sufficient resources to JCDC to ensure that the conditions of housing inmates can be met in a manner conforming to the requirements of the United States Constitution and to ensure that JCDC operates consistent with those standards.

34. Defendant Metro Government, through its official conduct, has deliberately instituted and followed policies, customs, and procedures, that are deliberately indifferent to the operational

needs and deficiencies of resources employed by JCDC, which create conditions that are reasonably certain to result in the housing of violent inmates that pose an unreasonable risk of harm to other inmates and pretrial detainees like the Plaintiff in the general population of the jail, thereby creating unconstitutional conditions of confinement and these policies, customs and procedures resulted in the harm to the Plaintiff.

## VI.     CAUSES OF ACTION
### COUNT I

35. Defendants' conduct was objectively unreasonable, intentional, reckless, deliberate, wanton and/or malicious, and was indicative of their total, deliberate and reckless disregard of and indifference to Plaintiff's life as well as his rights and the risk of harm to him occasioned by such conduct.

36. The acts and omissions alleged against the individual Defendants above additionally, in whole or in part, was the result of policies, customs, and practices of Defendants either written or unwritten, and that such policies, customs and practices were the "moving force" behind his injuries. Such practices constitute an arbitrary use of government power, and evince a total, intentional, deliberate and unreasonable disregard for and indifference to the lives and constitutional and common law rights of inmates at the Jail, including Plaintiff, and the wholesale violations of those rights likely to result from the regular and systematic pursuit of such practices.

37. As a result of the foregoing, Plaintiff, through Defendants' objectively unreasonable, deliberate indifferent and grossly negligent -- if not reckless, intentional and/or malicious -- conduct, failed to protect Plaintiff, and he was subjected to cruel and unusual punishment and denied due process of law in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. §1983.

## COUNT II

38. Plaintiff realleged and incorporates by reference all previous allegation herein.

39. By virtue of the foregoing, the individual Defendants named above were negligent and grossly negligent, rising to such level as to warrant the imposition of punitive damages.

## COUNT III

40. Plaintiff realleged and incorporates by reference all previous allegation herein.

41. By virtue of the foregoing, Defendants violated KRS 441.045(3).

## VII.   DAMAGES

42. Plaintiff's injuries were preventable, and he is therefore entitled to recover for the wanton and unnecessary physical and mental pain and suffering he has endured in the past and will endure in the future, the injuries he sustained, including all medical expenses past and future, and the income he may have lost as a consequence of his injuries and any consequent disabilities. Also, Defendants' violations of Plaintiff's constitutional and common law rights were objectively unreasonable, cruel, malicious, and evinced a total, deliberate and reckless disregard for and indifference to his life and those rights, entitling Plaintiff to recover punitive damages from Defendants in order to deter such conduct in the future.

43. Plaintiff is entitled to reasonable attorney fees under 42 U.S.C. §1988.

**WHEREFORE**, Plaintiff requests a trial by jury, and further requests that he be awarded actual and punitive damages, pre- and post-judgment interest, costs, attorneys' fees and all other relief to which he is entitled under law or in equity.

Respectfully Submitted this 30th day of November, 2023

/s Gary S. Logsdon  
Gary S. Logsdon,  
PO Box 382  
Brownsville, KY 42210