UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CHARLES MATLOCK,                                                                     Plaintiff,

v.                                                       Civil Action No. 3:23-cv-637-DJH-CHL

LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT et al.,                              Defendants.

\* \* \* \* \*

## MEMORANDUM AND ORDER

Plaintiff Charles Matlock sued Louisville-Jefferson County Metro Government (Metro), Louisville Metro Department of Corrections (LMDC) Director Jerry Collins, and various LMDC correctional officers in their official and individual capacities (LMDC Defendants), alleging violations of his constitutional rights and Kentucky law during his pretrial detention in LMDC custody. (Docket No. 1; *see also* D.N. 7) The Court previously granted the defendants' motion for partial dismissal under Federal Rule of Civil Procedure 12(b)(6), finding that Matlock's claim against Metro under Ky. Rev. Stat. § 441.045(3) was barred by sovereign immunity and that official-capacity claims against the LMDC Defendants were duplicative. (D.N. 30) Metro now seeks leave to file a third-party complaint. (D.N. 22; *see also* D.N. 24) Matlock opposes the motion, contending that the proposed third-party complaint is "legally futile" and would "unnecessarily complicate the proceedings." (D.N. 25, PageID.291) After careful consideration, the Court will grant in part and deny in part Metro's motion for leave to file a third-party complaint for the reasons set forth below.

I.

The Court incorporates the following factual summary set out in its March 31, 2025 Memorandum and Order:

> In March 2023, Matlock was a pretrial detainee incarcerated at LMDC. (D.N. 7, PageID.50 ¶ 1) Matlock was assigned to Dorm 3 within the general population, which was significantly overcrowded. (*Id.*, PageID.53 ¶¶ 12, 14) Another inmate housed in Dorm 3, Kenya Manson, was "being held on charges that included assault and terroristic threatening," and he "was known to be a violent inmate, having assaulted other inmates at least twice within the LMDC facility in the two months prior." (*Id.*, PageID.54 ¶¶ 15–17) Despite its awareness that Manson posed a danger to other inmates, LMDC housed Manson with the general population, instead of housing designated for inmates with violent or dangerous tendencies. (*Id.* ¶¶ 18–19)
>
> At approximately 8:40 p.m. on March 25, 2023, Manson attacked Matlock "without apparent provocation," resulting in multiple facial fractures, including around Matlock's eyes, and an epidural hematoma requiring a craniotomy, which left Matlock permanently cognitively impaired. (*Id.*, PageID.55 ¶ 22) Despite constant video surveillance of Dorm 3 (*see id.*, PageID.56 ¶ 25), LMDC officers "did not respond to the assault until approximately 11:45 PM . . . when other inmates in the dorm held the injured and bleeding [Matlock] up to the dorm door and repeatedly kicked and knocked to attract the attention of officers." (*Id.* ¶ 26) Matlock was then taken to the University of Louisville Hospital's Emergency Department, "where he underwent a tracheostomy and neurosurgery, along with surgery to address the fractures to his face." (*Id.*, PageID.57–58 ¶ 29) Once his condition was stable, Matlock "was discharged to the care of LMDC with a long list of discharge instructions necessary to his health and recovery." (*Id.*, PageID.57 ¶ 29) Matlock was then released from custody to seek medical treatment on his own, leading to "delay and deterioration of his condition, causing additional mental and physical pain and suffering, and requiring treatment at his own expense." (*Id.* ¶¶ 30–31)

(D.N. 30, PageID.317–18 (alteration and omission in original))

Metro now seeks leave to file a third-party complaint against Manson for apportionment (Count I), indemnity (Count II), and contribution (Count III) as related to Matlock's negligence and gross-negligence claims. (D.N. 24-1, PageID.283–85 ¶¶ 20–32) Matlock argues that Metro's proposed third-party complaint is futile because (1) "Manson is not an 'indispensable party' under [Federal Rule of Civil Procedure 19]"; (2) neither 42 U.S.C. § 1983 nor the related state law claims carry a right to "contribution or indemnification";[1] and (3) "'[a]pportionment' is not a recognized

---

[1] In his response, Matlock argues that federal and state law do not permit Metro to shift § 1983 or related state-law liability to Manson. (D.N. 25, PageID.295–98) But as Metro's reply makes clear, the proposed impleading of Manson is focused solely on the "negligence and gross negligence

2

independent cause of action." (D.N. 25, PageID.291) In reply, Metro maintains that joining Manson as a third-party would not cause undue prejudice or complicate any future trials, and that including Manson will "improve judicial economy by expediting a final determination of all right[s] and liabilities" related to Manson's attack on Matlock in a single suit. (D.N. 29, PageID.309–10) The Court will consider each of these arguments in turn.

## II.

"The right to implead is not automatic, and district courts have broad discretion in determining whether to permit impleader." *Navigators Ins. Co. v. Univ. of Louisville Found., Inc.*, 329 F.R.D. 557, 560 (W.D. Ky. 2019) (citing *Ohio Farmers Ins. Co. v. Special Coatings, LLC*, No. 3:07-1224, 2008 WL 5378079, at *13 (M.D. Tenn. Dec. 23, 2008)). Federal Rule of Civil Procedure 14(a)(1) provides that "[a] defending party may . . . serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer."[2] Fed. R. Civ. P. 14(a)(1). "[T]imely motions for leave to implead third parties should be freely granted . . . unless to do so would prejudice the plaintiff, unduly complicate the trial, or . . . foster an obviously unmeritorious claim." *Rams v. Cordish Operating Ventures, LLC*, No. 3:16-cv-233-DJH-CHL, 2017 WL 833054, at *3 (W.D. Ky. Mar. 2, 2017) (first omission in original) (quoting *In re Yamaha Motor Corp. Rhino ATV Prod. Liab. Litig.*, No. 3:09-MD-2016-JBC, 2009 WL 2241599, at *2 (W.D. Ky. July 24, 2009)). But "[t]he third-party claim 'must be founded on a third-party's actual or potential liability to the defendant

---

claims." (D.N. 29, PageID.309, 312) Thus, the Court need not reach Matlock's arguments pertaining to § 1983. (*See generally* D.N. 25)

[2] Because Metro filed its motion for leave to file a third-party complaint more than fourteen days after serving its original answer (*see* D.N. 22), it must first obtain leave of this Court to do so.

3

for all or part of the plaintiff's claim against the defendant.'" *Navigators Ins. Co.*, 329 F.R.D. at 560 (quoting *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008)).

**A.     Timeliness**

"The motion's timeliness is 'an urgent factor governing the exercise of [the Court's] discretion'" under Rule 14. *In re Yamaha Motor Corp.*, 2009 WL 2241599, at *2 (quoting *Stevens v. Lazzarini*, No. 99–CV–1057, 2002 WL 1584277, at *1 (S.D. Ohio March 23, 2002)). As Metro points out, "discovery in this case is in its infancy, and there is no trial date." (D.N. 29, PageID.310) Moreover, Metro's motion was filed before the Court's deadline for joining additional parties expired. (*Id.* (citing D.N. 21)) The motion is therefore timely. *See Trane U.S. Inc. v. Meehan*, 250 F.R.D. 319, 322 (N.D. Ohio 2008) (concluding that "[p]otential procedural problems provide[d] no justification for denying the defendant leave" to file a third-party complaint where substantive discovery had not yet commenced); *see also Franklin Bank & Tr. Co. v. John Hancock Life Ins. Co. (USA)*, No. 3:21-CV-435-RGJ, 2023 WL 4240752, at *7 (W.D. Ky. June 28, 2023) (finding motion to file a third-party complaint timely, even after substantive discovery had begun).

**B.     Prejudice and Undue Complication**

Matlock argues that impleading Manson "over a year into this proceeding" would delay and unnecessarily complicate the matter by introducing "new factual and legal disputes regarding Manson's alleged role, necessitat[ing] additional discovery involving an incarcerated third-party defendant, and divert[ing] focus from the core issues—whether Defendants' own failures in classification, supervision, and medical care violated Plaintiff's rights."[3]  (D.N. 25, PageID.300)

---

[3] The Court notes that the quotation attributed by plaintiff's counsel to *Hughes v. Adams*, No. 5:06-cv-p176-R, 2007 WL 3306076, at *3 (W.D. Ky. Nov. 6, 2007), does not appear in the opinion.

He further contends that adding Manson would "undermine [his] right to control the claims he asserts." (*Id.*)  Meanwhile, Metro maintains that "[a]ny potential prejudice to [Matlock] caused by impleading Manson as a third-party defendant is the result of [Matlock's] own action in choosing not to add Manson." (D.N. 29, PageID.311)  Metro further argues that the proposed impleader would not unduly complicate the case because "the proposed third-party claims against Manson and [Matlock]'s claims against Defendants arise from a common nucleus of facts." (*Id.*, PageID.312)

The factual issues in the amended complaint and proposed third-party complaint substantively overlap: Matlock's claims are based on Metro's alleged responsibility for the incident involving Manson and Matlock's resulting injuries, while Metro seeks to recover from Manson based on his actions during the same incident. (*Compare* D.N. 1 *with* D.N. 24-1)  Because Metro's claims arise from the same facts as Matlock's, impleading Manson would not "interject immaterial [legal] issues into the case." *Franklin Bank*, 2023 WL 4240752, at *7.  Nor were Metro's claims "asserted so late as to prevent their introduction" on grounds of causing prejudice, given that discovery is ongoing. *Id*.  Thus, while allowing Metro to implead Manson may introduce some new issues, there is still "a logical relationship between the third-party claims and the 'transaction or occurrence' that is the subject of the complaint." *In re Computrex, Inc.*, No. CIV.A. 04-196-KSF, 2005 WL 1866081, at *3 (E.D. Ky. Aug. 3, 2005).  Finally, impleading will not interfere with Matlock's ability to "control the claims he asserts;" he will remain in charge of pursuing his constitutional and state-law claims, while Metro will independently litigate any third-party claims it brings against Manson.  (D.N. 25, PageID.301)  Accordingly, permitting Metro to implead Manson will promote judicial efficiency without prejudicing Matlock's ability to litigate his chosen claims.

5

C.  **Unmeritorious Claims**

"Indemnity, contribution, and apportionment are three related yet distinct concepts in Kentucky law. . . . All three doctrines distribute responsibility for damages among various defendants based on relative fault." *Stanford v. United States*, 948 F. Supp. 2d 729, 743–44 (E.D. Ky. 2013). Metro's proposed third-party complaint alleges all three. (D.N. 24-1, PageID.283–85) But apportionment and contribution are not "'claims' under Kentucky law." *Poole v. HEC Leasing, Inc.*, No. 3:22-CV-506-CRS, 2023 WL 6151237, at *3 (W.D. Ky. Sept. 19, 2023) (citation omitted). While Ky. Rev. Stat. § 411.182 "provides a right to an apportionment interrogatory or finding where underlying substantive fault exists," the statute "does not provide a substantive cause of action itself." *Burton v. HO Sports Co.*, No. 4:06CV-100-JHM, 2009 WL 1390832, at *2 (W.D. Ky. May 14, 2009) (quoting *Hall v. MLS Nat. Med. Evaluations, Inc.*, No. CIV A 05-185-JBC, 2007 WL 1385943, at *2 (E.D. Ky. May 8, 2007)); *see also Asher v. Unarco Material Handling, Inc.*, 2008 WL 2473680, *3 (E.D. Ky. June 16, 2008). And "the apportionment of causation and the requirement of several liability obviates any claim for contribution among joint tortfeasors whose respective liabilities are determined in the original action." *Burton*, 2009 WL 1390832, at *2 (quoting *Degener*, 27 S.W.3d at 779). Counts I and III of the proposed third-party complaint thus assert "obviously unmeritorious claim[s]." *Rams*, 2017 WL 833054, at *3. Nevertheless, Metro will be entitled to an apportionment instruction under Ky. Rev. Stat. § 411.182 "if the evidence supports such an instruction at trial." *Burton*, 2009 WL 1390832, at *2.

The indemnity claim is "the only independent claim in [Metro's] third-party complaint." *Hall*, 2007 WL 1385943, at *2. Indemnity is a common-law doctrine that refers to "simply the repayment to one party by another party who caused the loss, of such amounts the first party was compelled to pay." *Id.* (quoting *Liberty Mut. Ins. Co. v. Louisville & Nashville R.R. Co.*, 455

S.W.2d 537, 541 (Ky. 1970)). "Kentucky courts have held that both statutory contribution and common-law indemnity require underlying liability by a third-party defendant to an original claimant." *Id*. (collecting cases). "Because indemnity holds a tortfeasor liable for all of the plaintiff's damages, the party claiming indemnity must show that this strong remedy is warranted." *Stanford*, 948 F. Supp. 2d at 745. Under Kentucky law, indemnity is available in two scenarios:

> (1) [w]here the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury.

*Texas Cap. Bank, N.A.*, 2012 WL 443460, at *2–3 (W.D. Ky. Feb. 10, 2012) (quoting *Degener*, 27 S.W.3d at 780 (internal citation omitted)).

Metro characterizes its own potential negligence or liability to Matlock as "passive in nature," in contrast to the "alleged negligence or other wrongful acts of Manson [that] were active in nature." (D.N. 24-1, PageID.284 ¶ 27) Specifically, Metro argues that Matlock's negligence claims are based on Metro's "alleged failure to monitor and observe the inmates under [its] custody and control and the failure to respond and provide [Matlock] with medical attention for hours after he was assaulted", whereas "the intentional criminal acts of Manson were the primary cause of [Matlock]'s claimed injuries." (D.N. 29, PageID.313 (internal citation omitted)) Because Metro alleges that Manson's "fault is so great that the parties are not *in pari delicto*," *Stanford*, 948 F. Supp. 2d at 746 (citations omitted), Count II is not "obviously unmeritorious." *Rams*, 2017 WL 833054, at *3; *see also Gookin v. Altus Cap. Partners, Inc.*, No. CIV.A. 05-179-JBC, 2006 WL 7132020, at *2 (E.D. Ky. Mar. 24, 2006) ("[I]f the third-party plaintiff's claim is that if [it] is liable, it is 'only technical or secondary or partial [liability], and the third[-]party defendant is

7

derivatively liable and must reimburse [the third-party plaintiff] for all or part . . . of anything [it] must pay,' then impleader is permissible." (omission in original) (citation omitted)).

**D.     Rule 19**

Finally, Matlock contends that Metro improperly seeks to implead Manson under Federal Rule of Civil Procedure 19, asserting that Metro's "argument misapplies Rule 19's standard and overlooks the fundamental distinction between liability among joint tortfeasors and truly indispensable parties." (D.N. 25, PageID.291)  But while Metro's amended motion incorporates the original motion and thus invokes Rule 19, Metro also relies on Rule 14. (*See* D.N. 22, PageID.247–50; D.N. 24; D.N. 29)  Rule 14 permits a party to bring in a third-party defendant through an indemnity claim when "the defendant is attempting to transfer liability from himself to a third-party defendant in the event he is found to be liable to the plaintiff."  *Linda's Leather, LLC v. Zambrano*, No. 5:21–CV–046–CHB, 2022 WL 100216, at *2 (E.D. Ky. Jan. 10, 2022) (quoting *Wells Fargo Bank v. Gilleland*, 621 F. Supp. 2d 545, 547 (N.D. Ohio 2009)).  Thus, "[i]ndemnity and other forms of secondary or derivative liability are 'central' to third-party practice under Rule 14."  *Crowell v. M St. Ent.*, LLC, No. 3:21-CV-00517, 2023 WL 2763125, at *4 (M.D. Tenn. Apr. 3, 2023) (quoting Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1446 (3d ed.)).  Accordingly, the Court correctly analyzed Metro's indemnity claim under Rule 14.

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Metro's motion to file a third-party complaint (D.N. 24; D.N. 22) is **GRANTED** in part and **DENIED** in part. The motion is **DENIED** as to Counts I and III. It is **GRANTED** as to Count II.

(2) Within **ten (10) days** of entry of this Order, Metro shall file a revised third-party complaint containing only the indemnity claim.

August 12, 2025

David J. Hale, Judge
United States District Court

9