**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:23-CV-00637-DJH-CHL**

**CHARLES MATLOCK,** **Plaintiff,**

**v.**

**LOUISVILLE-JEFFERSON COUNTY METRO GOVERNMENT, et al.,** **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Compel filed by Plaintiff Charles Matlock ("Plaintiff"). (DN 56.) Defendant Louisville-Jefferson County Metro Government ("Defendant") has filed a Response. (DN 61.) Plaintiff has filed a Reply. (DN 63.) Plaintiff has also filed a Motion for Leave to File Exhibit Under Seal. (DN 57.) Defendant has not responded to the Motion to Seal and the time for doing so has passed. Therefore, both Motions are ripe for review. For the following reasons, Plaintiff's Motion to Compel (DN 56) is **GRANTED IN PART** and Plaintiff's Motion to Seal (DN 57) is **DENIED WITHOUT PREJUDICE**.

## I. Background

Plaintiff was a pretrial detainee awaiting arraignment before the Jefferson District Court on charges of theft by unlawful taking. (DN 1 at ¶ 11.) Due to inadequate housing space, Plaintiff was assigned to a dorm that held more inmates than that for which it was designed, creating an overcrowded living environment. (*Id.* at ¶ 13.) Among those housed with Plaintiff was inmate Kenya Manson ("Manson"). (*Id.* at ¶ 14.) Manson was known to be a violent inmate, having assaulted other inmates at least twice. (*Id.* at ¶ 16.) Manson attacked and beat Plaintiff, causing severe injuries. (*Id.* at ¶ 21.) Plaintiff is now suing Defendant under 42 U.S.C. § 1983. (*Id.* at ¶¶ 35-41.)

The Louisville Metro Department of Corrections ("LMDC") uses post orders to direct correctional officers at a particular post or assignment. (DN 56-1, at PageID # 553.) Post orders define who has the authority to act, what actions are required or prohibited, and how officers share responsibilities on a shift. (*Id.*) In May of 2024, Plaintiff issued the following discovery requests, receiving the following responses:

> **Request for Production No. 4:**
>
> Produce all logs, reports, notations, active post orders, and shift assignments by / for LMDC personnel for West Hold H6, Dorm 3 on March 25, 2023, including any documents identifying individuals assigned to monitor or supervise the unit.
>
> **RESPONSE: Objection, this Request is overly broad and unduly burdensome. Without waiving any objections, please see attached.**
>
> **Request for Production No. 7:**
>
> Produce all policies, procedures, or directives in effect in March 2023 relating to classification and housing of inmates with a known history of violence.
>
> **RESPONSE: Objection, this Request is overly broad and unduly burdensome. Without waiving any objections, see attached.**
>
> **Request for Production No. 8:**
>
> Produce all policies, procedures, or directives in effect in March 2023 regarding video surveillance, observation, and supervision of inmate dormitories at LMDC.
>
> **RESPONSE: Objection, this Request is overly broad and unduly burdensome. Without waiving any objections, see attached.**
>
> **Request for Production No. 9:**
>
> Produce all policies, procedures, or directives in effect in March 2023 concerning response to inmate-on-inmate assaults, including first aid protocols and emergency medical transport.
>
> **RESPONSE: Objection, this Request is overly broad and unduly burdensome. Without waiving any objections, see attached.**

(DN 56-11, at PageID # 586-87.) Defendant did not produce any post orders in response to these requests. (DN 56-1, at PageID # 554.) It was not until December of 2025 that Defendant stated,

for the first time, that post orders were confidential and that it would not produce any. (DN 56-5, at PageID # 573.)

The Court conducted a telephonic status conference to discuss the post orders. (DN 49.) During the conference, Defendant's counsel repeated that the post orders were highly confidential and instead offered to provide a list of topics and/or headings in the relevant orders to Plaintiff's counsel and to discuss the possibility of producing redacted versions of those documents. (*Id.* at PageID # 489.) After the conference, Defendant gave Plaintiff an outline derived from the three post orders it identified as responsive. (DN 56-1, at PageID # 555.) But Defendant's counsel told Plaintiff that it would not produce the post orders absent a court order. Plaintiff's counsel represented to the Court that the outline provided was insufficient to "authoritatively describe the universe of post orders or provide sufficient information to assess completeness or relevance." (DN 52, at PageID # 539.) Plaintiff also represented that it lacked post orders governing "classification, observation, counts, supervision, assault response, or related duties during the relevant period." (*Id.*)

The Court conducted an additional telephonic status conference with the Parties. (DN 54.) The Parties represented that they still could not agree to resolve the issue of post orders. (*Id.*) Counsel for Defendant agreed to meet with Defendant to address this issue and to determine whether Defendant would produce additional responsive material. (DN 56-7, at PageID # 579.) Plaintiff's counsel followed up with opposing counsel on this later, saying he had not been advised of the outcome of Defendant's meeting with its counsel. (DN 56-8.) Defendant's counsel did not respond. (DN 56-1, at PageID # 555.)

The Parties met and conferred on February 12, 2026, to discuss Defendant's production. (DN 56-1, at PageID # 556.) Counsel for Defendant said that she could not confirm whether

additional post orders exist or say whether Defendant maintains a comprehensive index of post orders, and that she would need to confer with her client on those questions. (*Id.*) The Parties also discussed the redactions made to the post orders that had been produced. Counsel for Defendant redacted portions of those orders for security reasons but did not elaborate on either the content of the redacted material or the specific security concerns implicated by any particular redaction. (*Id.*) After the Parties' final conference failed to resolve the outstanding issues, Plaintiff filed the present Motion to Compel.

## II. Discussion

At issue are two items of discovery. The first item is Plaintiff's request for a complete index of all post orders in effect at the time of the incident, or in the alternative, Plaintiff's request that Defendant affirmatively represent that no additional responsive post orders exist pertaining to the requested topics beyond the three already produced. The second item is Plaintiff's request that the Court order Defendant to produce the unredacted versions of the disputed sections of the post orders, or in the alternative, conduct an in camera review of the unredacted post orders to determine whether they should be produced in an unredacted format.

### A. Standard

Matters of discovery are within the sound discretion of the trial court. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). The reviewing court reviews a ruling by the trial court limiting or denying discovery under an abuse of discretion standard. *Id.* An abuse of discretion exists when the reviewing court is "firmly convinced" that a mistake has been made. *Bush v. Rauch*, 38 F.3d 842, 848 (6th Cir. 1994).

The scope of discovery includes any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). A party may

request any other party to produce any designated documents or electronically stored information within the responding party's possession and within the scope of discovery. *Id.* 34(a)(1)(A). A party may move to compel a discovery response if the other party has failed to produce the requested documents. *Id.* 37(a)(3)(B).

Information must be relevant to be discoverable. Fed. R. Civ. P. 26(b)(1). The Supreme Court has interpreted relevance broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on," the claims or defenses of any party. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Essentially, a request for discovery seeks relevant information if there is any possibility that the information sought may be relevant to a claim or defense of any party in the action. *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007). When an objection to relevance is raised or the relevance of the information sought is not apparent, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the action. *First Mercury Ins. Co. v. Babcock Enters., Inc.*, No. 3:21-CV-00672-GNS-CHL, 2024 WL 3939604, at *7 (W.D. Ky. Aug. 26, 2024). When the discovery material sought appears to be relevant, the party who is resisting production bears the burden of establishing that the material is not relevant, or that it is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure. *Invesco*, 244 F.R.D. at 380. This party bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury. *Id.*

Plaintiff is suing Defendant under a theory of *Monell* liability. (DN 56-1, at PageID # 551.) Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a local government may not be sued under 42 U.S.C. § 1983 for an injury inflicted by its employees or agents unless such injury was fairly representative of official policy or custom. *Id.* at 694. Under Sixth Circuit case law,

there are four methods to prove a local government's illegal policy or custom. *Hart v. Michigan*, 138 F.4th 409, 425 (6th Cir. 2025). The plaintiff may prove: (1) the existence of an illegal law or policy; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Id.* Thus, any information bearing on official policy or custom is directly relevant.

**B. Completeness**

Regarding Plaintiff's request for a complete index of all LMDC post orders in effect on the date of the incident, Defendant is correct that it has no obligation to produce such an index without a discovery request. Under Rule 37(a)(3)(B)(iv), a party may move for an order compelling production or inspection if a party does not produce documents as requested under Rule 34. Under Rule 34(b)(1)(A)-(B), a request must describe "with reasonable particularity" each item or category of items to be inspected and specify a reasonable time, place, and manner for inspection. A party must then serve this request on the responding party under Rule 5. Fed. R. Civ. P. 5(a)(1)(C). If a request is not signed by the requesting party, the responding party has no duty to act on it. *Id.* 26(g)(2).

Plaintiff has not requested an index of all post orders under Rule 34. All of the discovery requests at issue in Plaintiff's Motion include some kind of qualifier such as "all logs, reports, notations, active post orders, and shift assignments by/for LMDC personnel *for West Hold H6, Dorm 3*" or "all policies, procedures, or directives in effect in March 2023 *relating to classification and housing of inmates with a known history of violence*." (DN 56-1, at PageID # 553) (emphasis added). A fair reading of these requests would not cover a comprehensive index of all post orders active on the day of the incident. Although Plaintiff argues that this is the mechanism by which

he can assess the completeness of Defendant's document production, Rule 34 does not require a producing party to provide "a detailed description or log of all documents withheld." Fed. R. Civ. P. 34(b)(2)(C) advisory committee's note to 2015 amendment.

But if the Court is to hold Plaintiff to the letter of the rules, then it is only fair that it does so for Defendant as well. Under Rule 34, a party objecting to a request for production must either state that inspection and related activities will be permitted as requested or state *with specificity* the grounds for objecting to the request. Fed. R. Civ. P. 34(b)(2)(B). Moreover, when a party is withholding documents on the basis of an objection, that party must so state, and permit the requesting party to inspect the rest. *Id.* 34(b)(2)(C). Defendant has failed to do either.

First, Defendant's objection to each request at issue is simply: "Objection, this Request is overly broad and unduly burdensome. Without waiving any objections, see attached." (DN 56-11, at PageID # 586-87.) Such nonspecific, boilerplate objections are not acceptable responses to discovery. *Wesley Corp. v. Zoom T.V. Prods., LLC*, No. 17-10021, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018) ("Defendants' 'objections' to these discovery requests are the typical boilerplate objections known and detested by courts and commentators—and receiving parties—around the nation."). Therefore, the Court finds Defendant's objections insufficient.

Second, Defendant fails to state whether it is withholding any documents on the basis of its objections. Defendant provides the Court with no defense or explanation as to why it fails to do so, but Plaintiff states that counsel "could not confirm whether additional [p]ost [o]rders exist, could not say whether LMDC maintains a comprehensive index of [p]ost [o]rders, and stated that she would need to confer with her client on those questions." (DN 56-1, at PageID # 556.) Defendant does not dispute that its counsel said this, nor does Defendant assert in its Response that the produced post orders are the only responsive post orders that exist. From these facts, the

Court can infer that Defendant either refuses to say whether there are additional responsive documents or simply does not know. The former is contrary to the Rules, and the latter is no excuse. *See Merriweather v. UPS*, 3:17-CV-349-CRS-LLK, 2018 WL 3572527, at *8 (W.D. Ky. July 25, 2018) ("In responding to [Rule 34] discovery requests, a reasonable inquiry must be made…") (quoting *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014)). Given that Defendant's counsel has already represented that she would confer with her client to determine whether responsive documents exist, the Court will order her to do so.

**C. Redactions**

Plaintiff also requests that Defendant produce unredacted versions of two sections in the produced post orders: "Duty Station" and "Security Automation System Operation." (DN 56-1, at PageID # 561.) In the alternative, Plaintiff requests that Defendant file an unredacted version of those provisions under seal for in camera review so that the Court can assess the legitimacy of Defendant's objections. Defendant does not object to an in camera review, but it does object to producing the post orders in an unredacted format.

The two sections at issue appear to be relevant. When a plaintiff is seeking to prove the existence of an illegal policy, or the existence of a policy of inadequate training or supervision, then it stands to reason that evidence of such policy, such as the post orders, would be relevant if the post orders affected pertinent duties. Here, the post orders do concern pertinent duties. "Duty Station" bears on the responsibilities of an officer stationed at the control room and would likely include information addressing what the officer was required to do during an emergency, such as an inmate-on-inmate assault. (DN 56-1, at PageID # 561.) "Security Automation System Operation" relates to how the surveillance system is operated and thus would bear on whether Defendant's policy with respect to surveillance was inadequate. (*Id.*) Therefore, these sections

are relevant. Defendant's only objection—albeit a significant one—to this request is that "any leak of this information could be detrimental to jail security and should not be produced in unredacted format to Plaintiff." (DN 61, at PageID # 620.)

A party resisting discovery bears a heavy burden of demonstrating that discovery will work a clearly defined and very serious injury. *Invesco*, 244 F.R.D. at 380. Yet Defendant fails to meet this burden. Defendant fails to explain to the Court, and to Plaintiff, how disclosing these sections in an unredacted format will work a clearly defined and very serious injury, instead pointing to a vague concern that any leak of that information "could be detrimental" to jail security. (DN 61, at PageID # 620.) Defendant also appears to put the burden on *Plaintiff* to prove that these post orders should be produced over its vaguely defined security concerns, when it is Defendant who must show good cause to withhold them. (*Id.*) Nor does Defendant even argue that allowing Plaintiff to see these sections would pose a danger, only that "[a]ny leak of this information" could pose a danger. (*Id.*) Nevertheless, the Court will address Defendant's concern.

Federal courts have repeatedly found good cause to limit discovery or disclosure of information implicating the safety and security of prisons and jails. *Shadburne v. Bullitt Cnty.*, No. 3:17CV-00130-DJH, 2017 WL 6391483, at *3 (W.D. Ky. Dec. 14, 2017) (citing *Fourhorn v. City & Cnty. Of Denver*, 261 F.R.D. 564, 569 (D. Col. 2009)). But Defendant's solution, to withhold the redacted portions from even Plaintiff's counsel, is strong medicine. Instead, courts usually order parties to produce documents such as these under a protective order. *Schuh v. Clayton*, No. 20-10468, 2021 WL 3489695, at *9 (E.D. Mich. Aug. 9, 2021) (ordering the defendants to produce employment files and jail incident reports under a protective order); *McMillen v. Windham*, No. 3:16-CV-558-CRS, 2018 WL 652829, at *4 (W.D. Ky. Jan. 31, 2018) (granting a protective order that limited the disclosure of video footage); *Shadburne*, 2017 WL

6391483, at *3 (ordering the defendants to produce a jail policy and procedures manual subject to a protective order limiting the use of such manual to the preparation of the case).

Here, the Court finds that the best solution is to instruct the Parties to propose an agreed protective order. To be certain, the Court does not enter protective orders simply because the Parties agree to them. Rule 26(c) of the Federal Rules of Civil Procedure sets forth the circumstances under which a party or person from whom discovery is sought may move the court in which the action is pending to enter a protective order. The movant must certify that he or she has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. Fed. R. Civ. P. 26(c)(1). That court may, for good cause, enter a protective order. *Id.* Here, the Parties have a confidentiality agreement. *See* (DN 56-1, at PageID # 556 n. 1.) When the Parties have such an agreement, entry of a protective order is neither appropriate nor necessary. In such cases, the parties need only document the terms of their agreement and proceed with discovery. But this is not one of those cases.

The Parties have a confidentiality agreement, but the Court does find good cause to issue a protective order regardless. Jail security is a highly sensitive category of information, and ordering facilities to disclose such information unrestricted could create security and safety risks to facility staff as well as to the public. *See McMillen*, 2018 WL 652829, at *4. Such risks warrant the enforcement mechanism of a protective order. Moreover, this is not a case where the Parties are presenting the Court with an agreed protective order absent a dispute; there *is* a dispute. Therefore, the Court finds that a protective order limiting the use of the unredacted provisions is appropriate. The Court will instruct the Parties to meet and confer to create an agreed protective order, just as they did when they made their confidentiality agreement, and present their agreed

order to the Court for consideration. Defendant must then disclose the unredacted provisions pursuant to such agreed order within seven days after the Court enters the order.

**D. Sanctions**

Plaintiff also requests attorney's fees incurred in bringing this Motion. (DN 56-1, at PageID # 563.) Under Rule 37, if a court grants a motion to compel in part, then the court may issue any protective order authorized under Rule 26(c) and may, after giving the parties an opportunity to be heard, apportion the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C). When parties have taken legitimate positions, then courts generally conclude that justice requires that each party be responsible for their own fees and costs. *Benavidez v. Sandia Nat'l Lab'ys*, 319 F.R.D. 696, 720 (D.N.M. 2017). Here, both Parties have taken legitimate positions, and as such, the Court finds that both Parties should bear their own expenses related to this Motion.

**E. Motion to Seal**

Plaintiff additionally requests leave of Court to file an exhibit under seal. (DN 57.) But Plaintiff's Motion does not address the standard for filing a document under seal. It is well established that a "strong presumption" exists in favor of keeping court records open to the public. *See, e.g., Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1176-79 (6th Cir. 1983). The party seeking to seal the records bears the heavy burden of overcoming the presumption, and "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). To meet this burden, the party seeking a seal must show: (1) a compelling interest in sealing the records; (2) that the interests in sealing outweigh the public's right of access; and (3) that the proposed seal is narrowly tailored. *Id.*; *Rudd*

*Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593-94 (6th Cir. 2016). The Sixth Circuit has held that "[t]he proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Shane Grp.*, 825 F.3d at 305-06 (quoting *Baxter Int'l., Inc. v. Abbott Lab'ys*, 297 F.3d 544, 548 (7th Cir. 2002)). Further, in ruling on a motion to seal, the Court is required to make "specific findings and conclusions 'which justify nondisclosure to the public.'" *Rudd*, 834 F.3d at 594 (quoting *Brown & Williamson*, 710 F.2d at 1176). "'[A] court's failure to set forth those reasons . . .' is itself sufficient grounds to vacate the seal." *Id.* (quoting *Shane Grp.*, 825 F.3d at 306). The fact that parties might agree that the document should be filed under seal has no bearing on the Court's analysis. "A court's obligation to keep its records open for public inspection is not conditioned on an objection from anybody." *Shane Grp.*, 825 F.3d at 307.

A fair reading of Plaintiff's Motion would indicate that Defendant is the true proponent of sealing. *See* (DN 57, at PageID # 592) ("Sealing is necessary to honor the confidentiality designation under which the documents were produced and to avoid publicly disclosing material that Metro contends is security-sensitive, even though Plaintiff disputes the breadth and justification of Metro's redactions, as set forth in the Motion to Compel."). Yet Defendant has provided no response to this Motion explaining why sealing is justified. Therefore, the Court will instruct Defendant to file a Motion to Seal that meets the standard set by *Shane Group*.

## III. Order

For the foregoing reasons,

IT IS HEREBY ORDERED that:

(1) The Motion to Compel (DN 56) filed by Plaintiff is **GRANTED IN PART**.

(a) The Court will deny Plaintiff's request to order Defendant to produce a complete index of post orders but grant Plaintiff's alternative request to order Defendant to confirm whether additional post orders exist. No later than **September 18, 2026**, counsel for Defendant shall confer with Defendant to determine whether any additional information responsive to Plaintiff's request for information as to Defendant's policies and procedures addressing classification, video surveillance, or inmate-on-inmate assault response is within Defendant's possession, custody, or control, with the exception of the previously produced post orders. On or before that same date, Defendant shall file a status report with the Court confirming whether such information is within its possession, custody, or control.

(b) No later than **September 18, 2026**, the Parties shall meet and confer to create a proposed agreed order to present to the Court for consideration. Seven days after the entry of such proposed agreed order by the Court, Defendant shall produce the unredacted versions of the sections entitled "Duty Station" and "Security Automation System Operation."

(c) Both Parties shall bear their own expenses incurred in relation to this Motion.

(2) The Motion to Seal (DN 57) filed by Plaintiff is **DENIED WITHOUT PREJUDICE**. No later than **October 19, 2026**, Defendant may file a motion to seal that addresses the standard under *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299 (6th Cir. 2016). The Clerk of Court shall maintain DN 58 provisionally under seal. If Defendant does not file a motion to seal by the deadline, the Clerk of Court shall permanently unseal DN 58.

cc: Counsel of record

August 17, 2026

Colin H Lindsay, Magistrate Judge
United States District Court